There are two issues before the court in this case. The first is whether or not the affidavit in support of the search warrant supported Nexus to search the premises of the apartment. at 201 West A Street in Granger, Washington. And the second is, if it did not, whether the Leon Goodfaith exception applies. There are also two standards of review, and one of them I think is very important. The first is it's de novo for conclusions of law, but the second is that there's clear error for factual findings, and there was at least one very, very critical factual finding that was made by Judge Van Sickle that I believe was in clear error. The entire support for Nexus to support the search of this premises was based on inferences. There are no facts in the affidavit that support any kind of Nexus. What's wrong with the use of inferences? Well, nothing in particular, Your Honor, but as the court said in Thomas, United States v. Thomas, mere suspicion or speculation cannot be the basis for the creation of logical inferences, and I would suggest that all that we have here are suspicion, one suspicion after another. Well, we know for sure, I gather, that this guy was engaged in identity theft. Well, we do know that, Your Honor. Right. What we do not know. And we know that he, I understand you think there's some issue about whether he was the renter or the landlord, but it seems a fair inference that if somebody was using a phony name, he was probably not the landlord, so we're going to assume, so I gather that you're at least comfortable with assuming that he was the renter and that he was using a phony name. Yes, Your Honor. I don't really see why it matters whether he's, quote, moved in or not. He doesn't have to be living there. He has to be using the space. Well, true, but. And so usually when people rent something, they use it, and he was, in fact, and he did it in a phony name, which suggests that there's some connection between his criminal activity and the space. Why isn't that alone enough? Well, that's what Judge Van Sickle thought. No, I know, but I put one additional thing in, I think, which is he doesn't need to be living there. It doesn't matter if he was living there. Well, that's true, Your Honor. The issue, I think, is whether or not he moved, not necessarily moved in, but whether he was even using the premises. I personally have rented many a house that I haven't gotten into the first day that I was entitled to possession. So that is simply an inference, again, that needs to be made, that he was the tenant, that he had, if not moved in, was at least using the premises already. But more importantly, I think the inference that really is the crux of this matter is whether or not there is any nexus that would show between the crime that he was apparently, that Gilbert was apparently committing in the car, or the evidence. Well, he wasn't committing it in the car. There was evidence in the car that he was committing it, and it had to be actually committed somewhere else, right? Well. Because it was identity theft, meaning he had to produce pieces of paper and so on. Well, not necessarily, Your Honor. Identity theft can be simply mailboxing and stealing social security numbers and stealing checks. That is also. But I thought he ultimately had doctor checks. He had, on his person, he had some write checks. In the car were found some alter checks, some Ford checks. Doctor checks, right. Right. So he had to do that someplace. Well, not necessarily. That required a location. At least it was reasonable to infer that he was doing so in a location. It doesn't have to be a certainty. No, it does not, Your Honor. But one of the facts that, and this gets to my point about the factual error that Judge Van Sickle made, is when he says on, and this is excerpts of record page 10 at the top, lines 1 through 9, basically. He ends up, he says, Detective Johnson's affidavit of February 6th indicates Mr. Gilbert was making false driver's licenses and creating Ford's checks. There is nothing in the affidavit that suggests that at all, none. And based upon that fact. What about just the description of when they, I don't remember exactly what it said, but it said that they found him with doctored driver's licenses and checks, didn't they? That does not necessarily mean that he made them, Your Honor. What it shows is that he was engaging in identity theft. But there's still no nexus that shows that evidence of that identity theft should be found at his residence. The circuit has basically said that magistrates can rely upon the conclusions of police officers. This officer had no conclusion in his affidavit whatsoever. They can rely on the training and experience of police officers. This officer did not put down that he had any kind of training and experience. All this affidavit contained were a couple of facts from which it was necessary for the magistrate to skip from inference to inference to inference. And I suggest that that simply is not sufficient to form that nexus. Our circuit has gone so far as to say that in drug dealing cases, it can be inferred that a dealer will keep drugs at his residence. And that inference has been based upon the conclusions and the training and experience of police officers. Our circuit has never said anything about how it can be inferred that somebody engaging in identity theft would have evidence of that identity theft at the residence. And that, I think, is what is missing in this case. It's that nexus. I mean, let's just review it again. I know which you're arguing, but the facts in the affidavit indicated a man by the name of Brian Gilbert had engaged in forgery and identity theft, and that Gilbert possessed the rental agreement for the house in question, and that Mr. Gilbert had signed the rental agreement using a different name, David Beck. It seems like with all of the other items in his possession, it seems like certainly a reasonable inference could be drawn that this person might have that in his home. Might, Your Honor. It's a suspicion that he might. But it's a reasonable inference that can be drawn. And I guess even if we accept what you're saying, how does this not satisfy the good faith basis that the law enforcement officers have? Thank you, Your Honor. I wanted to reserve a little time, but I will answer that question. I believe personally that this is a bare bones affidavit, the ultimate of bare bones affidavit. If the officer had added that he was an experienced forgery and identity theft investigator and that usually people who have multiple different false identities and rent apartments under false identities are doing their work in their houses, that would have solved the problem? You suggest that in your brief. And I've always been slightly suspicious of that kind of testimony anyway. And I don't see why it helps. Because I can say that much without being an expert. That's probably true. Would that solve the problem? I'm sorry, Your Honor. Would it have solved the problem had there been another paragraph which said, I'm an experienced forgery investigator. And in my experience, people who have on multiple occasions engaged in identity fraud are likely to be producing those false identity papers in locations that they rent. Thank you, Your Honor. I don't think that that necessarily would have solved the problem. Particularly if they read them under false names. I think that if there was evidence in the affidavit supporting the officer's experience and training and why that experience and training could reasonably. That seems absurd because I'm not experienced in training. And it seems perfectly logical to me that that's the case even without any experience or training. Well. And so that's what an inference is. Okay. I just don't think that it's reasonable to infer. I think that once the court accepts that and basically says that if somebody has used a false name to rent an apartment that that creates an inference that they're using that apartment for criminal activity. When they are engaged in a kind of criminal activity that requires a location to produce it. Well, there's no evidence that he was actually producing anything, Your Honor. Again, he was in possession of these things. It's very possible that somebody else could have been producing them. Very possible that somebody else could have been buying them from somebody. There's simply nothing in that affidavit that indicates that he was manufacturing the items that he had in his possession. Okay. Your time is up. Thank you very much. Thank you. We'll give you a minute in rebuttal if you want it. Thank you. May it please the Court and Counsel. My name is James Gaikin. I represent the United States in this matter. This affidavit, Your Honor, that supports the search warrant of the A Street residence is supported by a probable cause. As the Court has identified, there are a number of facts in the affidavit. And there are a number of reasonable inferences that the original state court judge could make to arrive at a probable cause determination. And we're guided here by Judge Van Sickle's order, which goes through and catalogs those reasonable inferences. The affidavit establishes that Mr. Gilbert was stopped in a stolen car. He gave a false identification to the WSP officer who stopped him. He had multiple checks with different names than the account numbers. And that's established by the first couple paragraphs of the affidavit. So they're not simply mailboxing where he has stolen checks that he's taken from some other location. They are altered checks. The affidavit makes that clear. It may have to be teased out a little bit. But the early paragraphs make clear that the two initial complainants complained of their accounts being utilized in a fraudulent manner. And then when Mr. Gilbert is stopped some days later, he has checks with different names than those initial complainants. So they are altered checks. As the Court has pointed out, that has to occur someplace. It is a reasonable inference, as Judge Van Sickle pointed out, as the initial state court magistrate made. Well, it actually probably didn't occur in this apartment, right, because he had just rented it. That's true. But the inference is that he's moved to another apartment. And he's going to take the tools of his trade with him, his possessions with him. But let's talk about the rental agreement at issue here, because I think it's noted in the agreement that the agreement was between Beck, Chavez, and Cruz. But it doesn't state which of these individuals, if any, was listed as the actual tenant. I wanted to just ask that question, and whether or not that affects the inference that the magistrate drew, and whether it was reasonable, without more, that Mr. Gilbert was a tenant living at that address. Thank you, Your Honor. And there's a logical inference that can be made by that rental agreement. The person using the false name is Mr. Gilbert. It is illogical that the landlord would be using a false name to rent out the residence. And it's clear from the affidavit that Mr. Santa Cruz was contacted and did identify that Mr. Gilbert was using a false name. It makes no sense that he would be using a false name to rent it out to people. It logically follows from the series of events where we have him in a stolen car, him using a false name. It does strike me that this is a poorly drafted affidavit. I mean, for example, presumably they knew who was the renter and who was the landlord if they went and talked to the person, and they could have written that down. They could have. There are additional facts that could have been added to this affidavit, and we know what they are. They're in the plea agreement that's part of this record. Well, why weren't they added? I can't answer that, as I'm not the drafter of the affidavit. Had I assisted in drafting the affidavit, I would have asked for some more facts. But the question here is... They also could have asked the landlord if he was the landlord, whether these people had moved in or not. Absolutely could have. Those additional facts could have been added into this affidavit. But the question is, is there probable cause based on what is here? And the government's position is there are. As Judge Van Sickle made... Let me just be clear about something. There does have to be probable cause to think not just that the person who is associated with this place is a criminal, but that there is going to be found there evidence of the crime. For example, if you stop somebody in a car and you are pretty sure he's a murderer, is that enough to just go and look? And you know where he lives. Can you just go in the house and search it? Not on those facts alone. If the person's a murderer, can we just go search the house? I would want some more facts in the affidavit. Here there are more facts in the affidavit. This affidavit just doesn't simply make a conclusion. This person's a check forger. We want to search his house. There are a series of factual bases that get that probable cause, meet that probable cause hurdle. We have multiple complainants who have had their bank accounts compromised. This Mr. Gilbert is found in possession of multiple checks under different names than those account holders. It shows he's making checks or creating checks somewhere, offering a fake ID. If somebody is a murderer and the murderer was with a gun, the gun is somewhere. Those are more facts. As we add those more facts to that. But the question is, is it there? That's the question. I think there is a nexus to the property because it's a reasonable inference that somebody who's engaged in this activity needs a place to do it. They need a place to store it. They need a place to store the fruits of their activities. For instance, we have multiple in the affidavit early on, the complainants are talking about the items that have been purchased, TVs and things of that nature at these various stores. So these items have to be somewhere. You have fruits of the crime, you have the facilitating aspects of the crime, the devices that make these checks and make these fake IDs. And the court's question goes also into the issue of good faith. Could there have been more facts in the affidavit? Yes. But there is no instance or suggestion in the record that there was recklessness as the false information. No suggestion is false information in the affidavit. Well, one possibility is there could have been more facts, and the other possibility is there couldn't have been more facts because they didn't gather them, i.e., they actually didn't know whether this person was a landlord or the renter, and they actually didn't ask him whether this individual was taking possession right away or not. So we don't know whether there were more facts that were left out or the facts didn't exist. That very well could be. But there are facts sufficient in the affidavit to establish probable cause. And if the question is could there have been more facts added, is this affidavit sufficient? Looking at the good faith exception, it's not so faithfully sufficient that the officers couldn't presume from where it was found. They have added facts in there as to Mr. Gilbert's activities. They've created a nexus as to why it would be reasonable to find fruits of that crime and evidence of that crime at the location that was subject to search. And we have two reasonable jurists. We know that two thoughtful and competent judges could disagree as to this, or could agree as to this. Judge VanSickle and the underlying state court judge who did find there was probable cause and that the warrant was facially sufficient. That's not relevant, is it? It is relevant. It goes to the- You do, Your Honor. Don't we? You do, absolutely. But that is to the issue of suppression. The issue is the factual determination and the reasonable inference that those facts are reviewed for clear error. So I'm looking at, particularly when you go to the good faith standard, the question then becomes could thoughtful and competent judges disagree as to the, there are facts of probable cause there, if that's the case. We're reviewing for a clear error the inferences from the bare bones of this document? I wouldn't say that this is a bare bones document, Your Honor. Well, I didn't say a bare bones document. I said from the bare bones of the document. In other words, that we have some deferential review of just what inferences are drawn from this document. There is deference to the probable cause determinations this court has previously found. From an affidavit for a warrant when all you're doing is looking at a, without any evidence at all other than the document, which we can look at as well as the district judge? Yes. I would give, I would direct the court to the United States to be CRUPA, 658 F3rd 1174, 9th Circuit, 2011. That there is a deference given to that probable cause determination. I thought there's a deference given with regard to the determination of the magistrate judge who made the determination, but that doesn't tell us whether this is an adequate document. I would suggest that it does, Your Honor, given, when looking through the lens of that deference, is the magistrate judge entitled to deference that there are sufficient probable cause in this document? But not to the district judge who decided the case, the challenge, the suppression challenge. That would be correct, Your Honor. That would be, that would be the review, the suppression issue. But it is helpful in this case because we have an explanation as to how a reasonable jurist could reach the inferences that the magistrate judge evidently did to find probable cause. We had a reasonable jurist in. Your Honor, I think you're undermining your argument at this point. Thank you, Your Honor. But I would just close and say if in any, if the court were to find that the warrant affidavit didn't provide sufficient probable cause, none of the factors that undermine good faith are present here. There is not falsity or recklessness as the facts. There's not an abandonment of the judicial role by the state magistrate or the reviewing district court. It's not so lacking in PC as to be entirely unreasonable, and it's not so faithfully deficient that the officers couldn't rely upon it. Thank you. Thank you very much. You may have a minute in rebuttal if you'd like. Thank you, Your Honor. You don't need to use it. Sorry, Your Honor. Did you, did you say I had a minute? You may have a minute in rebuttal if you'd like, but you do not need to use it. I have a minute in rebuttal. Thank you. The only rebuttal I have, Your Honor, is to dispute the government's view that this affidavit had enough in it to, that a reasonable person could disagree with it. I believe that... That rebuttal is your argument to begin with, which we've already heard. Exactly. I believe that it's absolutely, if this is not a bare-bones affidavit, there is no bare-bones affidavit to be had. Wow. It's not that bare-bones. There's a lot of information on the crime and the nature of the crime, so. And, okay. Thank you very much. I'm sorry. Thank you, Your Honor. All right. The case of United States v. Evangelista is submitted, and we will go to Carter v.
judges: Graber, Berzon, Murguia